**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IKON OFFICE SOLUTIONS,　　　）
INC.,　　　　　　　　　　　　）
　　　　　　　Plaintiff,　　　　）
　　　　　　　　　　　　　　　）
　　　v.　　　　　　　　　　　）　　　**Civil Action No.**
　　　　　　　　　　　　　　　）　　　**1:12-cv-01316-JEC**
THE LAW OFFICE OF CRAIG　　）
KUGLAR, LLC,　　　　　　　　）
　　　　　　　　　　　　　　　）
　　　　　　　Defendant.　　　　）
_____  ）

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff IKON Office Solutions, Inc., by and through its undersigned counsel, hereby files this Memorandum of Law in Opposition to the Motion to Dismiss filed by Defendant, The Law Office of Craig Kuglar, LLC ("Kuglar").

**I.　　　INTRODUCTION AND FACTUAL BACKGROUND**

IKON Legal Document Services ("LDS") is a division of IKON engaged in the business of, among other things, providing litigation support, including electronic discovery and document production services, to law firms and in-house legal department customers. *See* Amended Complaint, Dkt. No. 13, at ¶ 1. On January 24, 2012, IKON entered into a Statement of Work contract with Kuglar pursuant to which IKON promised to provide Kuglar with litigation support

services in return for Kuglar's promise to pay for said services, services which were utilized by Kuglar in connection with his business and work as counsel representing the Defendant, Lee Farkas, in the matter of *USA v. Farkas*, Case No. 10-CR-200-LMB.  *Id.* at ¶ 2.  At Kuglar's sole direction and instruction, IKON performed various services for Kuglar pursuant to the Statement of Work contract, incurring substantial costs as a result.  *Id.* at ¶ 3.  Although Kuglar agreed to "pay to IKON the fees in the amounts and at the rates set forth" in the Statement of Work contract for the services performed by IKON, Kuglar ultimately defaulted on its obligation to pay these amounts.  *Id.* at ¶¶ 4, 6.

There are two core issues, and claims, in this case.  The first concerns Kuglar's contractual commitment to pay IKON for the services IKON rendered to Kuglar.  The second concerns the consequences of the conclusion Kuglar drew, and representations that Kuglar made to IKON, that Kuglar would be able to pay for the services it ordered from IKON under the Statement of Work contract – for which Kuglar alone was contractually obligated.  IKON's Complaint presumes that Kuglar genuinely believed and honestly concluded that it would receive, or had been promised, sufficient funds for Kuglar to pay for the cost of the services Kuglar ordered (including all of the amounts owed to IKON under the Statement of Work contract).  Kuglar's conclusions and representations were, presumably,

based upon: (i) an insurance policy held by Mr. Farkas that purportedly covered said costs; and/or (ii) conversations between Kuglar and Mr. Farkas' insurer. *Id.* at ¶¶ 17, 29. Kuglar represented to IKON that Kuglar would receive sufficient funds from Mr. Farkas' insurer and, in so doing, induced IKON to continue to perform services (and incur costs) well after IKON had already been rendering services under the Statement of Work contract and after Kuglar was already in arrears for services IKON had already performed. *Id.* at ¶ 29. IKON relied on Kuglar's stated conclusions and representations, based upon Kuglar's status as an attorney. *Id.* at ¶¶ 32, 40.

Ultimately, however, Kuglar's conclusions and representations regarding the availability of sufficient funding to pay for the costs incurred by IKON proved to be mistaken. Kuglar has apparently not received, but was subsequently denied, sufficient funding from his client's insurance company to pay the more than $500,000 Kuglar owes IKON pursuant to the Statement of Work contract for the services IKON provided. *Id.* at ¶¶ 15, 19, 20, 30. Indeed, Mr. Farkas' insurer has asserted that it had only agreed to cover up to One Million Dollars ($1,000,000.00) of the costs incurred in Mr. Farkas' defense and that (contrary to Kuglar's representations) it was not obligated by the insurance contract or other arrangement

to pay any additional sums, including the more than $500,000 owed by Kuglar to IKON. *Id.* ¶ 19.

On the basis of these facts, IKON filed an Amended Complaint stating causes of action for breach of contract, negligence, and negligent representation. In its Motion to Dismiss, Kuglar contends that each of IKON's claims must be dismissed.  Kuglar first argues that IKON's breach of contract claim should be dismissed because Mr. Farkas – not Kuglar – is "the party" that is "contractually obligated" under the terms of the Statement of Work contract.  Kuglar's argument is flatly contradicted, however, by the Statement of Work contract itself, which repeatedly refers to the client as "The Law Offices of Craig Kuglar LLC" and which Mr. Kuglar signed as the "Owner" of "The Law Offices of Craig Kuglar LLC."  *See* Statement of Work contract attached as Exhibit "A" to the Amended Complaint, Dkt. No. 13-1, at p. 13.

Further, right above Kuglar's signature on the Statement of Work contract, it specifically states that it was the "The Law Office of **Craig Kuglar LLC** [that] hereby authorizes IKON to proceed with the litigation support services described and specified in the foregoing Statement of Work for IKON services, and **agrees to the terms and conditions as specified herein**." *Id.* (emphasis added).

Finally, *the cover page* of the Statement of Work contract specifies that *the client for whom the work is to be performed* was "The Law Office of Craig Kuglar."   *Id.*   In turn, the Terms and Conditions to which Kuglar agreed specifically stipulates that "[t]he **performance of the services** described in this Statement of Work ("SOW") by IKON Office Solutions **for the client referenced on *the cover page*** of this document ("Client") is subject to and shall be governed by the following terms and conditions" – one of which is payment by Kuglar and another of which is liability for legal fees incurred by IKON any action necessary to collect said payment from Kuglar.  *Id.* (emphasis added).

Kuglar further alleges that IKON's negligence and negligent misrepresentation claims must be dismissed under Pennsylvania law.  It is *Georgia law*, however, that governs IKON's extra-contractual tort claims and, under Georgia law, IKON has plainly stated valid claims.

First, Georgia extends liability to professionals who, during the course of their business or profession, negligently provide information to third parties when the professional is "manifestly aware of the use to which the information was to be put and intended that it be so used" regardless of whether the parties are in privity or whether an attorney-client relationship exists.  That standard is easily met here, where IKON has alleged that Kuglar made specific representations regarding the

availability of funding – representations that were obviously made by Kuglar in the belief that he would be proven correct and intended by Kuglar to assure IKON that it would be paid for continuing  to perform the "IKON services," which Kuglar wanted to continue having IKON deliver.  *See* Amended Complaint, Exhibit "A," Dkt. No. 13-1.

Second, the economic loss doctrine that Kuglar seeks to interpose is unavailing.  That doctrine does not bar IKON's negligence claims because Kuglar's obligations to IKON are founded not only in contract, but also arise from Kuglar's separate and independent duty to provide accurate information to IKON.

Finally, the integration clause contained in the Statement of Work contract does not apply to Kuglar's representations because they were made *after* the Statement of Work contract was executed.

## II.   <u>LEGAL ARGUMENT</u>

### a.  Motion to Dismiss Standard

The law governing motions to dismiss pursuant to Civil Rule 12(b)(6) is well-settled.  A court may dismiss a complaint only where it appears beyond all doubt that it could not grant relief under any set of facts that the plaintiff may prove that are consistent with its allegations.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Dismissal of a claim is only appropriate when, on the basis of a

dispositive issue of law, no plausible construction of the factual allegations will support the cause of action. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Moreover, the court must draw all reasonable inferences in favor of the pleader. *John Walker & Sons v. Tampa Cigar Co.*, 197 F.2d 72, 73 (5th Cir. 1952).

> **b. IKON's Breach of Contract Claim Should Not Be Dismissed Because Kuglar Is Clearly A Party To The Statement of Work Contract.**

Kuglar argues that IKON's breach of contract claim must be dismissed because the parties did not intend that Kuglar would be a party to the Statement of Work contract, and that Kuglar actually executed the Statement of Work contract on behalf of his client, Lee Farkas. Kuglar further argues that the "face of IKON's allegations leaves no doubt that IKON was aware" of this fact. *See* Kuglar's Motion to Dismiss, Dkt. No. 19, at p. 9. Even a cursory review of IKON's Amended Complaint and the Statement of Work contract flatly contradicts Kuglar's self-serving claims.

The Statement of Work contract repeatedly and consistently provides that it is a contract by and between <u>Kuglar</u> and IKON. Indeed, the *very first page* of the Statement of Work contract provides that it was prepared "**For The Law Office of Craig Kuglar, LLC**." *See* Statement of Work contract attached as Exhibit "A" to

the Amended Complaint (emphasis added), Dkt. No. 13-1.  Consistent with this express designation, appearing directly above Craig Kuglar's signature on the Statement of Work contract, it states that "The Law Office of **Craig Kuglar, LLC hereby authorizes IKON to proceed with the litigation support services** described and specified in the foregoing Statement of Work for IKON Services, **and agrees to the terms and conditions as specified herein**."  *Id.* at p. 13 (emphasis added).  Elsewhere, the Statement of Work contract provided that the performance of services described in the contract was "for the client referenced on the cover page" of the contract, which – as identified above – was "The Law Office of Craig Kuglar, LLC."  *Id.* at p. 10.  The Statement of Work contract further provided that "The Law Office of **Craig Kuglar, LLC agrees to pay** IKON in accordance with IKON's standard terms" for the provision of services under the Statement of Work contract.  *Id.* at p. 13 (emphasis added).  In sum, there is simply no basis for Kuglar to advance the claim that Kuglar was not a party to the Statement of Work contract.

Kuglar points to two references to advance its contention that Lee Farkas should be treated as "the party" with whom IKON contracted when Kuglar executed the Statement of Work contract ("SOW Contract").  Neither of the two references cited support Kuglar's argument.  First, Craig Kuglar contends that he

wrote "Atty for Lee Farkas" under Mr. Kuglar's signature line because he was signing it as Farkas' agent and that this makes Farkas the obligated party under the SOW contract.  However, Kuglar fails to identify the <u>full</u> title line, in which Mr. Kuglar wrote that he was signing as the "Owner" of the Law Office of Craig Kuglar.  *Id.* at p. 13.  Whether Mr. Kuglar also chose to self-identify as Mr. Farkas' attorney is irrelevant: Mr. Kuglar clearly signed as a party to the SOW Contract, on behalf of his law firm, and his gratuitous allusion to "Atty for Farkas" did not serve to change Farkas into the contracting party.[1]  Moreover, the fact that the cover page of the Statement of Work contract states "*Matter*: Farkas" is irrelevant to the identity of the contracting parties.  The matter identifier shows, in fact, that it was a Kuglar LLC business matter for which it contracted IKON's services.  This is an

---

[1]     Kuglar also argues that, because IKON believed Kuglar's representation that his obligations would ultimately be covered by his client's insurance, IKON has no contract claim against Kuglar.  Regardless of the source from which IKON believed Kuglar would raise the funds, the obligation (and IKON's reliance) was on Kuglar.  If Kuglar's getting the funds from his clients insurance company made it easier to make a large payment, and to thereby avoid "payment plans," "negotiations" – or this litigation – then so much the better.  But this does not alter the fact that the contractual obligation was undertaken by Kuglar and payment was ultimately Kuglar's responsibility.  Likewise, whether IKON would have placed additional obligations upon Kuglar after Kuglar became delinquent in its payment, and as the cost of the services provided mounted over time, is irrelevant to Kuglar's having contractually committed itself to paying for the services provided.

internal reference that demonstrates that it is a Kuglar file, and company responsibility, for which these expenses were incurred.

In addition to the lack of factual support for Kuglar's argument, there is also no legal basis for his claim. The cases cited by Kuglar are inapposite. Unlike this case, in the two cases Kuglar cites, the plaintiff was dealing with principals whose identities were specifically disclosed, on whose behalf the plaintiff knew the defendant was directly acting, and who would be directly responsible for payment. *See Marano v. Granata*, 24 A.2d 148, 149 (Pa. Super. Ct. 1942). *Myers v. GAF Corp.*, 2000 Phila. Ct. Com. Pl. LEXIS 64, at *2 (Dec. 12, 2000) (no liability for an organization that was negotiating a *settlement agreement* on behalf of its principal, a member in the organization, where the agent was not even a party to the litigation and the parties knew it was acting as alter ego on behalf of the principal).

In *Marano*, for example, the plaintiff sought to hold the defendant personally liable on a contract he had executed for the delivery of certain goods. 24 A.2d at 149. The court held that the agent was not liable because it was clearly acting as alter ego on behalf of its agent, as evidenced by the fact that: (1) the contract provided that the goods were ordered "for account of [principal];" and (2) the contract was executed by the individual "as Agent for the [principal]." *Id.* Neither

of these pivotal facts support Kuglar's position.  To the contrary, the SOW Contract repeatedly identifies <u>Kuglar</u> as the client, states that the services are being obtained "<u>for</u>" <u>Kuglar</u>, and was signed by Craig Kuglar as the "<u>Owner</u>" of The Law Office of Craig Kuglar LLC."  As distinguished from the holding in *Marano*, these facts clearly reveal that Kuglar was the principal on the contract, relied on as such by IKON, and that Kuglar was not signing as "agent" for, or alter ego of, another party.

### c.  Georgia Law Applies to IKON's Extra-Contractual Tort Claims.

Kuglar next claims that Pennsylvania law applies to IKON's tort claims on the basis of a choice of law provision in the Statement of Work contract.  Kuglar is mistaken.  The choice of law provision provides:

> <u>The SOW and any Services procured hereunder</u> shall be governed by the laws of the Commonwealth of Pennsylvania <u>both as to interpretation and performance</u>, without regard to its choice of law requirements.  <u>All other</u> ordering documents shall be <u>governed by the law of the jurisdiction in which the Services are being performed</u>.

*See* Ex. "A" to Amended Complaint, Dkt. No. 13-1, at § 12 (emphasis added).  On their face, IKON's tort claims do not relate to the interpretation of the contract or the parties' performance thereunder.  Rather, IKON's claims depend on negligent extra-contractual representations made by Kuglar regarding the insurance coverage he believed he had been promised, or to which he concluded and represented that

he was otherwise entitled, from Farkas' insurer – and which Kuglar represented (after the SOW Contract was executed) would provide him with the funds to cover Kuglar's obligation to pay for the services it ordered from IKON.  *See, e.g.*, Amended Complaint, Dkt. No. 13, at ¶¶ 24-26, 36-38.  Accordingly, the choice of law provision does not apply to IKON's tort claims.  *See Asplundh Tree Expert Co. v. Emeritis LLC*, Case No. 1:06-cv-432-WSD, 2006 U.S. Dist. LEXIS 45581, at *10 (N.D. Ga. June 27, 2006) (holding that Pennsylvania law applied to plaintiff's *tort claims* notwithstanding the *contract's* choice of law provision because the tortious misrepresentations at issue occurred in Pennsylvania).

Federal courts sitting in diversity apply the substantive law of the forum state, including the forum state's choice of law principles. *Asplundh*, 2006 U.S. Dist. LEXIS 45581, at *10.  Under Georgia law, a tort claim is governed by "the law of the place where the injury occurred."  *Id.*; *see also Mgmt. Sct. Am., Inc. v. NCR Corp.*, 765 F. Supp 738, 739 (N.D. Ga. 1991).  Here, there can be no dispute that IKON's injury, and the facts giving rise to its Amended Complaint, occurred in Georgia.  As a matter of record in this proceeding, Kuglar has already admitted that the services IKON provided were ordered by Kuglar in Atlanta; that they were provided by IKON's Atlanta office; and that all of Kuglar's communications and representations were made to IKON employees located in IKON's Atlanta office.

*See* Kuglar's Consolidated Memorandum of Law in Support of Motion to Dismiss and Motion to Transfer, Dkt. No. 11, at pp. 2, 11, 14.   Not only are these facts clear as a matter of record, but Kuglar is judicially estopped from repudiating his prior claim that all communications, obligations and transactions concerning the performance and acceptance of IKON's services occurred in Georgia.   *See generally Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010).   As Kuglar's own pleadings before the Court reveal, Georgia law applies to IKON's tort claims.

### d. IKON May State a Claim for Negligence and/or Negligent Misrepresentation Because Kuglar Negligently Provided Information During the Course of His Business.

Building upon its prior error, Kuglar further claims that IKON's negligence and negligent misrepresentation claims should be dismissed because IKON and Kuglar were not in an "attorney-client relationship" and, therefore, that Kuglar owed no duty to exercise reasonable care and diligence "*under Pennsylvania law*." *See* Motion to Dismiss, Dkt. No. 19, at p. 16-17 (emphasis added).   As noted, however, Pennsylvania law does not apply to IKON's negligence claims. Irrespective of any suggestion to the contrary that might (or might not) apply under Pennsylvania law, Georgia has adopted the rule enunciated in the Restatement of Torts, 2d § 522, which provides:

> One who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. (emphasis added).

A cause of action for professional negligence under Section 522 extends to third parties to whom the professional has negligently provided information notwithstanding the absence of an attorney-client relationship or privity between the professional and the plaintiff. *See* Retatement of Torts § 522(1) (2d 1977); *Robert & Co. v. Rhodes-Harverty P'ship*, 300 S.E.2d 503 (Ga. 1983) (extending professional negligence claim against engineer who prepared a report on which he knew third parties would rely); *Badische Corp. v. Caylor*, 356 S.E.2d 198 (Ga. 1987).

IKON has more than sufficiently pleaded a cause of action for negligent misrepresentation notwithstanding the lack of an "attorney-client relationship" with Kuglar.  Georgia law clearly provides that a professional, such as Kuglar, has a duty to exercise "reasonable care and competence" when providing information to IKON during the course of his profession and concerning which Kuglar knew, and intended, that IKON would rely.  *Id.*  As IKON has pleaded, Kuglar engaged IKON pursuant to the SOW Contract to provide certain litigation-related services

which Kuglar required in connection with Kuglar's business.  *See* Amended Complaint, Dkt. No. 13, at ¶ 8.  Services under the SOW Contract were provided to Kuglar on a rolling basis as they were ordered by Kuglar from IKON.  *See* SOW Contract, Dkt. No. 13-1, at p. 10, § 1.  Invoicing was issued throughout the duration of the project as services were performed.  *Id.* at p. 9.

To service Kuglar's continuing needs to prepare itself for trial, it was critical to Kuglar that IKON continue to perform under the Statement of Work contract and provide the services that Kuglar required – and to obtain these services, Kuglar gave IKON continuing ongoing assurances that the invoices due and owing to IKON, and payment for new and additional ongoing services, would be paid.  As Kuglar was well aware, IKON had the right to suspend or terminate its services for non-payment of invoices at any time.  *Id.* at p. 10, § 1.  During the time that Kuglar was under these contractual obligations to IKON, and experiencing mounting pressures from the stress of trial to obtain the trial support services he required in order to prepare himself to appear in court during the criminal trial, Kuglar negligently concluded – and represented to IKON – that Kuglar would receive, or had been promised, sufficient funds from Mr. Farkas' insurer to pay for the costs of IKON's continuing services.  *See* Amended Complaint, Dkt. No. 13, at ¶¶ 24, 36.

Given the pressure Kuglar was under to obtain trial support services from IKON in order to fulfill his own business needs, Kuglar was manifestly aware, and intended, that IKON would rely on his conclusions and representations regarding Kuglar's ability to make payment. *See* Amended Complaint, Dkt. No. 13, at ¶¶ 31, 39. Indeed, at Kuglar's urging, IKON did, in fact, rely upon Kuglar's representations, to its detriment, by continuing to perform services pursuant to the SOW Contract and by contracting for the services of *third parties* for whose services IKON has separately paid (*i.e.*, third parties concerning which, unlike Farkas, IKON has fulfilled its payment obligations). *Id.* at ¶ 40. Accordingly, IKON has adequately pleaded all of the elements required to state a claim for professional negligence under Georgia law. *Robert*, 300 S.E.2d at 503.[2]

### e. IKON's Tort Claims Are Not Barred by the Economic Loss Rule or Gist of the Action Doctrine

Kuglar also argues that IKON's negligence claims are barred by the economic loss rule and gist of the action doctrine because IKON is allegedly

---

[2] To the extent that Kuglar claims that IKON has failed to file the expert affidavit required by Georgia Code § 9-11-9.1, the Northern District of Georgia has held that Georgia's expert affidavit requirement is a state procedural requirement that does not apply in diversity actions filed in federal district courts. *See, e.g.*, *Botes v. Weintraub*, Civil Action No. 1:08-cv-01341-CAM, 2010 U.S. Dist. LEXIS 22793, at *26-28 (N.D. Ga. Mar. 11, 2010).

seeking to recover economic losses that, according to Kuglar, "completely overlap the contract claim."  Kuglar contends that dismissal is appropriate because IKON's negligence claim purportedly seeks "the benefit of the bargain it seeks in the reach of contract claim."   Kuglar's argument, however, is based on a fundamental misinterpretation of these doctrines and a twisting of IKON's allegations.

As an initial matter, Georgia law, unlike Pennsylvania law, does not recognize the "gist of the action doctrine."   Under the economic loss rule, a plaintiff to a contract who suffers purely economic losses must generally seek his remedy in contract and not in tort.  *Waithe v. Arrowhead Clinic, Inc.*, Case No. CV 409-021, 2012 U.S. Dist. LEXIS 30595, at *23 (S.D. Ga. Mar. 7, 2012).  However, "where an *independent duty exists* under the law, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Id. (emphasis added).*; *see also Liberty Mut. Fire Ins. Co. v. Cagle's Inc.*, Civil Action File No. 1:10-cv-2158-TWT, 2010 U.S. Dist. LEXIS 133521, at *8 (N.D. Ga. Dec. 16, 2010) (holding that the economic loss rule did not bar plaintiff's recovery where the plaintiff owed the defendant a duty independent from the contract).  Indeed, the Georgia Code expressly limits the application of the economic loss doctrine only to torts that result "from the violation of a duty which is itself the consequence of a contract."

O.C.G.A. § 51-1-11(a) (2000) ("[I]f the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, *except* in cases where the party would have a *right of action* for the injury done *independently of the contract*.") (emphasis added).

As described hereinabove, Kuglar separately and independently owed IKON a duty of reasonable care and competence as a matter of law by virtue of the fact that Kuglar provided information to IKON, concerning which Kuglar was manifestly aware that IKON would rely on an ongoing basis (in order to continue receiving services even after being delinquent under the SOW Contract), during the conduct of Kuglar's business. *Robert & Co.*, 300 S.E.2d at 503; *Badische Corp.*, 356 S.E.2d at 198. Kuglar's duty to provide accurate and reliable information to IKON does not arise from obligations contained in the Statement of Work contract and, therefore, the economic loss doctrine simply does not apply to and does not bar IKON's tort claims. *Liberty Mut. Fire Ins. Co*, Civil Action File No. 1:10-cv-2158-TWT, 2010 U.S. Dist. LEXIS 133521, at *8; *see also* O.C.G.A. § 51-1-11(a) (2000) (providing that parties *may pursue tort remedies* "in cases where the party would have a right of action for the injury done *independently of the contract*") (emphasis added).

- 18 -

Relevant here, Georgia also recognizes an exception to the economic loss doctrine for claims of misrepresentation. *See ASC Constr. Equip. USA, Inc. v. City Commer. Real Estate, Inc.*, 693 S.E.2d 559, 566 (Ga. Ct. App. 2010) (noting exception to the economic loss doctrine against a party who provides information in the course of his business to a third party whom the provider is aware of the use to which the information will be put and intends that it be so used). IKON's negligent misrepresentation claim falls squarely within this exception.

Finally, IKON is obviously permitted to plead alternate forms of relief in its Complaint. *See, e.g.*, Fed. R. Civ. P. 8(a)(3). Here, Kuglar has alleged that he is <u>not</u> a party to the Statement of Work contract. If Kuglar's argument is valid (which IKON denies), then there would be no contractual arrangement on which to base or append the application of the economic loss rule. Kuglar cannot have it both ways – he cannot deny that he is a party to the SOW Contract and then, nevertheless, seek to invoke that contract and the economic loss doctrine to evade liability on IKON's properly pleaded tort claims.

> **f. IKON's Tort Claims Are Not Precluded by the Merger Clause Contained in the Statement of Work.**

Lastly, Kuglar argues that IKON's negligence claims are barred by the integration clause contained in the Statement of Work contract, which provides:

> The parties agree that the terms and conditions contained in this SOW make up the entire agreement between them regarding the Services and supersede all **prior** written or oral communications, understandings or agreements between the parties **relating to the subject matter contained herein** including, without limitation, purchase orders.

*See* Statement of Work, Dkt. No. 13-1, at p. 13, § 13 (emphasis added). The integration clause, however, clearly only applies to communications or understandings made *before* the Statement of Work contract was executed. It does not apply in the present circumstances where Kuglar made representations *after* the parties executed the Statement of Work contract so that IKON would <u>continue</u> to perform services under the terms and conditions stated in the previously executed contract. *See Brilliant Alternatives, Inc. v. Feed Mgt. Sys., Inc.*, Civil Action No. 1:09-cv-2348-RWS, 2011 U.S. Dist. LEXIS 17768, at *10 n.1 (N.D. Ga. Feb. 22, 2011) (noting that statements made after a contract was signed were not barred from consideration by the court by either the contract's merger clause or the parol evidence rule); *see also, e.g.*, Amended Complaint, Dkt. No. 13, at ¶ 32, 37, 40.

Accordingly, Kuglar's representations to IKON after the contract was executed regarding the availability of sufficient funding to pay for the services that IKON was continuing to provide (and concerning which IKON incurred significant

costs) are not precluded by the integration clause and, accordingly, they may (and do) properly form the basis for IKON's negligence claims.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, IKON respectfully requests that this Court deny Kuglar's Motion to Dismiss.

Dated:  June 4, 2012                Respectfully Submitted,

DUANE MORRIS LLP

<u>/s/ *Alison M. Haddock*</u>
Alison M. Haddock
Georgia Bar No. 402448
amhaddock@duanemorris.com
Suite 2000
1075 Peachtree Street NE
Atlanta, GA 30309-3929
(404) 253-6900 (Telephone)
(404) 253-6901 (Facsimile)

*Counsel for Plaintiff*
  *IKON Office Solutions, Inc.*

OF COUNSEL *for Plaintiff*
*IKON Office Solutions, Inc.*
Thomas T. Loder, Esquire
Carla M. Bennett, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1246/1153/7312

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1D, the undersigned counsel hereby certifies that the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS complies with the font and point selections approved by the Court in LR 5.1B and 5.1C. The foregoing pleading was prepared on a computer using the Times New Roman font (14 point).

<u>/s/ *Alison M. Haddock*</u>
Alison M. Haddock
Georgia Bar No. 402448

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on June 4, 2012, a true and correct copy of the foregoing DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DECLARATION OF "EXCEPTIONAL CASE" AND AWARD OF ATTORNEYS' FEES AND EXPENSES was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

/s/ *Alison M. Haddock*
Alison M. Haddock
Georgia Bar No. 402448

*Counsel for Attorneys for Plaintiff*
*IKON Office Solutions, Inc.*

Duane Morris LLP
Suite 2000
1075 Peachtree Street NE
Atlanta, GA 30309-3929
(404) 253-6932 (Telephone)
(404) 393-4249 (Facsimile)
amhaddock@duanemorris.com (E-mail)