IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IKON OFFICE SOLUTIONS, INC., § § | |
| Plaintiff, § § | |
| § | Civil Action No. |
| vs. § | 1:12-cv-01316-JEC |
| § | |
| THE LAW OFFICE OF CRAIG § | |
| KUGLAR, LLC, § § | |
| § | |
| Defendant. § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY**

Plaintiff IKON Office Solutions, Inc., by and through its undersigned counsel, hereby files this Memorandum of Law in Opposition to the Motion to Stay filed by Defendant, The Law Office of Craig Kuglar, LLC ("Kuglar").

**I.   INTRODUCTION AND FACTUAL BACKGROUND**

On January 24, 2012, IKON entered into a Statement of Work contract with Kuglar pursuant to which IKON promised to provide Kuglar with litigation support services in return for Kuglar's promise to pay for said services, services which were utilized by Kuglar in connection with his business and work as counsel representing his client, Lee Farkas (who was the Defendant in the matter of *USA v.*

1

*Farkas*, Case No. 10-CR-200-LMB). *Id*. at ¶ 2. Based on that contract, and at Kuglar's sole direction and instruction, IKON performed various services for Kuglar pursuant to the Statement of Work contract. *Id*. at ¶ 3. Kuglar ultimately defaulted on its obligation under that contract to pay the amounts it was unilaterally obligated to pay to IKON. *Id*. at ¶¶ 4, 6.

There are two core issues in this case. The first concerns Kuglar's contractual commitment to pay IKON for the services IKON rendered to Kuglar. The second concerns the consequences of the conclusion Kuglar drew, and representations that Kuglar made to IKON, that Kuglar would be in a position to pay IKON for the services it ordered from IKON under the Statement of Work contract because of Kuglar's firm belief that it would receive, or had been promised, funds that would enable Kuglar to pay for the cost of the services it ordered (including all of the amounts owed to IKON under the Statement of Work contract) from an insurance policy held by his client, Farkas.

Ultimately, however, Kuglar was mistaken in his stated conviction that Farkas' insurer, National Union, had agreed to provide him with sufficient funding to pay for the costs of Farkas' defense, including the costs Kuglar incurred directly with IKON for services performed solely under Kuglar's direction. Upon learning

that Farkas' insurer would not provide Kuglar with sufficient funding – to pay bills Kuglar had already incurred – Kuglar represented Farkas in a lawsuit attempting to obtain additional funds from Farkas' insurer. Ultimately, the District of Virginia granted summary judgment in favor of Farkas' insurer and determined that the insurer was not obligated to pay any additional sums for Farkas' defense. Presumably, the funds Farkas seeks to obtain from National Union would have provided Kuglar with an easy source of funding from which he could pay vendors, including IKON, with whom Kuglar had directly contracted to obtain services in support of his professional activities representing Farks.

On the basis of these facts, IKON filed an Amended Complaint stating causes of action for breach of contract, negligence, and negligent representation. Kuglar has filed a Motion to Dismiss, contending that Mr. Farkas – not Kuglar – is the party that is "contractually obligated" under the terms of the Statement of Work contract. As IKON has definitively established in its Opposition to Kuglar's Motion to Dismiss, however, Kuglar's argument is flatly contradicted by the express terms stated in the Statement of Work contract itself, an agreement which repeatedly refers to <u>Kuglar</u> as the client and contractually obligates <u>Kuglar</u>, and no one else, to make the required payments to IKON for work performed under the

Statement of Work contract.  *See* IKON's Opposition to Kuglar's Motion to Dismiss.

Kuglar now seeks to stay this action pending the resolution of the appeal taken to the Fourth Circuit of the insurance dispute between two non-parties, *i.e.*, Farkas and his insurer, and argues (to this Court) that resolution of Farkas' insurance dispute will render "moot" IKON's claims against Kuglar.  Kuglar's argument is without merit.  Neither IKON nor Kuglar are parties to Farkas' insurance dispute.  Moreover, IKON's claims are not against Farkas or his insurer, National Union; nor are Farkas or National Union parties to the Statement of Work contract.  IKON's claims are against Kuglar, which alone is contractually obligated to pay IKON.  For that reason, a victory for Farkas in the insurance dispute in no way serves as a guarantee that IKON will be paid the amounts it is owed by Kuglar, as the insurance proceeds may be paid to a different stage or portion of Farkas' defense or, if Kuglar does receive any portion of the money from National Union, Kuglar may elect to pay other vendors (or recoup its own fees) rather than pay IKON the amounts Kuglar owes under the Statement of Work contract. Indeed, even Kuglar concedes that a victory for Farkas does not guarantee payment for IKON, stating instead in its Motion to Stay that a "positive resolution of the

Insurance Coverage Action *may* result in IKON being paid without any additional outlay by IKON." *See* Motion to Stay, Dkt. No. 25, at p. 7 (emphasis added). Accordingly, there is simply no overlap in the identity of the parties, no contractual provision, no privity of contract, and no basis for Kuglar's argument that the insurance dispute will moot IKON's claims.  Accordingly, IKON is entitled to proceed in its claims against Kuglar and there is no reason why this litigation should be stayed.

## II.     LEGAL ARGUMENT

Although courts have the inherent power to stay proceedings, "***where the parties and issues are not identical in the two actions***, the party seeking the stay bears a substantial burden: he must show a ***clear case of hardship or inequity in being required to go forward*** if there is even a fair possibility that the stay he requests will result in hardship to the other party." *Landis v. North American Co.*, 299 U.S. 248 (1936) (emphasis added); *Quality Control Electric, Inc. v. J. A. Jones Constr. Co.*, 1988 U.S. Dist. LEXIS 5551, at *20-21 (S.D. Ga. June 14, 1988). When deciding whether the moving party has met its burden of showing a "clear case of hardship" meriting a stay, the court should consider:  "(1) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant; (2)

whether a stay will simplify the issues in the case; and (3) whether discovery is complete and a trial date has been set." *Collegiate Licensing Co. v. Am. Cas. Co.*, 2012 U.S. Dist. LEXIS 5763 (N.D. Ga. Jan. 17, 2012) (denying motion to stay where separate actions involved different parties, different contracts and different issues). "The right of a litigant to pursue its legal remedy without delay weighs heavily in this balancing process." *Quality Control Electric, Inc.*, 1988 U.S. Dist. LEXIS 5551, at *20. Here, Kuglar has failed to meet or even address its burden of showing that a stay is appropriate.

### 1. Kuglar Has Not Shown That It Will Suffer a "Clear Case of Hardship" If A Stay Is Not Granted.

In support of its Motion to Stay, Kuglar argues that this case should be stayed because a reversal of the district court's decision concerning Farkas' insurance dispute *may* moot IKON's case *if*, as a result, Farkas' insurer pays IKON's invoices (and notwithstanding the fact that it is Kuglar, not National Union, that is solely obligated to pay them). Kuglar's argument does not credibly suggest any genuine, unfair hardship beyond the fact that it may be more convenient for Kuglar to wait until the insurance dispute of its client, Farkas, has been resolved (whether favorably or not) before it focuses on IKON's claims and

instead of paying them itself. Kuglar's argument is utterly insufficient to demonstrate a "clear case of hardship" warranting a stay.

Fatal to Kuglar's Motion is the simple and indisputable fact that the present litigation involves a breach of contract claim between IKON and *Kuglar*, while Farkas' insurance dispute involves claims between ***two different and unrelated parties***: Farkas and National Union. More than involving separate parties, these two proceedings involve completely different contracts and completely different issues. Specifically, in this action, ***IKON*** seeks to recover, directly from Kuglar, amounts that ***<u>Kuglar</u> is contractually obligated to pay <u>to IKON</u> under the Statement of Work contract*** for services provided by IKON ***<u>to Kuglar</u>***. In Farkas' insurance dispute, on the other hand, ***Farkas*** seeks to recover, directly from National Union, amounts that Farkas claims ***National Union is contractually obligated to pay Farkas under the insurance policy***.

Courts in this District frequently refuse to stay proceedings in circumstances such as these. *See Collegiate Licensing Co. v. Am. Cas. Co.*, 2012 U.S. Dist. LEXIS 5763 (N.D. Ga. Jan. 17, 2012). In *Collegiate Licensing*, the defendant sought to stay the case until a separate matter pending in California was resolved. The Court determined that a stay was not appropriate because the California action

"involves different parties and different [] contracts," and therefore separate issues were at play. *Id.* The same result is compelled here, where Kuglar's liability to IKON pursuant to the Statement of Work contract is utterly unrelated to National Union's insurance obligations to Farkas in the matter pending before the Fourth Circuit.

The cases relied upon by Kuglar are inapposite – indeed, not one case cited by Kuglar imposes a stay where ***none of the parties*** between the two cases are identical and where entirely separate and distinct contracts are at play. In one case cited by Kuglar, for example, the court imposed a stay where there were two class actions in the ***same district*** seeking the ***same relief***. *Nelson v. Grooms*, 307 F.2d 76, 78 (5th Cir. 1962). Kuglar similarly cannot avail itself of the reasoning behind the insurance dispute cases it cites, wherein the court considered whether to impose a stay when the insurer sought a declaratory judgment against its <u>own</u> insured regarding the scope of coverage that was available to the insured in an underlying tort claim. *See, e.g., Markel Int'l Ins. Co. v. O'Quinn*, 566 F. Supp. 2d 1374, 1375 (S.D. Ga. 2008). These cases do not apply here, where Farkas is not a party to these proceedings, has not been sued by IKON, and his dispute with his insurer is irrelevant to the issue of Kuglar's direct (and sole) liability to IKON.

Moreover, and contrary to Kuglar's position, courts have frequently <u>refused</u> to grant a stay even when an insurance company disputes its liability to its insured when the insured has been sued in an underlying tort claim (a situation that is not even analogous to the present action). *See, e.g., Home Ins. Co. v. Coastal Lumber Co.*, 575 F. Supp. 1081, 1083-84 (N.D. Ga. 1983) ("It would not be fair to Coastal, an injured party seeking compensatory damages, for this court to put Coastal on a back burner while Home seeks a declaratory judgment <u>as to its duties under a contract it has made with someone else</u>.") (emphasis added); *see also Central Surety & Ins. Corp. v. Norris*, 103 F.2d 116, 117 (5th Cir. Fla. 1939) ("It would not be equitable, if there is power, to delay these persons in the legal pursuit of their rights in order to enable an insurance company not yet sued to ascertain where it stands under a contract it has made with someone else."). This reasoning is even more plainly appropriate in the present circumstances, where Kuglar's <u>client</u>, not even Kuglar himself, is engaged in a dispute with his insurer over the scope of coverage under Farkas' insurance policy.

### 2. A Stay Would Unfairly Prejudice IKON.

In striking contrast to Kuglar's failure to carry its burden to prove that it would suffer a "clear case of hardship" in the absence of a stay stands the unfair

prejudice that IKON would suffer if it is forced to wait to pursue its claims against Kuglar. IKON's right "to pursue its legal remedy without delay weighs heavily" against a stay. *Quality Control Electric, Inc.*, 1988 U.S. Dist. LEXIS 5551, at *20. Forcing IKON to wait to pursue its contractual rights ***against Kuglar*** while Farkas determines his personal rights against his insurer is as illogical as it is unreasonable. It would simply not be fair to IKON, who has been injured by Kuglar's actions, and to whom neither Farkas nor National Union are contractually liable, for IKON to be forced to wait until Farkas' insurance dispute is resolved before it is permitted to proceed against Kuglar. *See Home Ins. Co.*, 575 F. Supp. at 1083-84; *Central Surety & Ins. Corp.*, 103 F.2d at 117; *New Hampshire Ins. Co. v. Shoney's, Inc.*, 1985 U.S. Dist. LEXIS 16606, at * 2-3 (S.D. Ga. Aug. 21, 1985) ("Plaintiffs' right to have their case heard in a timely manner carries great weight with the Court.").

### 3. A Stay Will Not Simplify the Issues in This Case Because This Matter Involves Different Parties and Different Contracts Than Farkas' Insurance Dispute.

Kuglar cannot reasonably argue that resolution of Farkas' insurance dispute will simplify, or moot, any issues before this Court, nor can Kuglar credibly argue that IKON's interests are "represented" in that matter. IKON is not a party in

Farkas' insurance dispute and has no claim against Farkas – IKON's claim is against Kuglar, who is the only party (with IKON) to the Statement of Work contract.  Whether Kuglar may indirectly benefit from Farkas' insurance dispute by receiving funds (or negotiating some kind of deal) from National Union is irrelevant.  There is simply no guarantee that a favorable result for Farkas will result in payment of IKON's invoices (which are owed by Kuglar).  Indeed, Kuglar itself only offers the halfhearted argument that a "positive resolution of the Insurance Coverage Action *may* result in IKON being paid." *See* Motion to Stay, Dkt. No. 25, at p. 7.  Kuglar's tenuous argument that IKON may indirectly benefit from Farkas' insurance dispute (assuming there is even sufficient funding to pay IKON's invoices and that Kuglar elects to apply any funds *he* receives to the invoices) is insufficient to delay IKON's right to proceed directly against the entity – Kuglar – with which it entered into a binding contract.  Absent a judgment from this Court against Kuglar, IKON will never have any guarantee that it will be paid.

      Moreover, regardless of whether Kuglar ultimately receives sufficient funding from National Union to pay IKON's invoices (an issue that is completely separate from whether Kuglar is, as IKON claims, contractually bound to pay the invoices), favorable resolution of Farkas' insurance dispute will not moot IKON's

separate and distinct claim for attorney's fees and costs, an independent form of relief to which which IKON is entitled to under the Statement of Work contract. *See* Exhibit "A" to Amended Complaint, Dkt. No. 13, at § 9. Accordingly, because this matter contains different parties, different contracts, and different claims, Kuglar's Motion to Stay should be denied.

### 4. Although Discovery Is Not Complete, There Is No Compelling Reason Sufficient to Justify Delaying IKON's Claims Against Kuglar.

Kuglar's final argument is that because discovery has not yet begun, any further delay to IKON is not prejudicial. Kuglar's argument is as untrue as it is irrelevant. The fact that IKON must proceed through the normal course of litigation has no bearing on whether IKON should be delayed by a stay from pursuing its clear contractual rights against Kuglar. IKON has a right to proceed through discovery and trial <u>without undue delay</u> to obtain a determination of its rights under the Statement of Work contract. *See Home Ins. Co.*, 575 F.Supp. at 1083-84. National Union's liability to Farkas is irrelevant to these issues and cannot resolve or eliminate Kuglar's contractual liability to IKON. Accordingly, IKON should not be delayed from proceeding through discovery and a full trial against Kuglar.

### III. CONCLUSION

For the foregoing reasons, IKON respectfully requests that this Court deny Kuglar's Motion to Stay.

                        DUANE MORRIS LLP

                        /s/ *Alison M. Haddock*
                        Alison M. Haddock
                        Georgia Bar No. 402448
                        amhaddock@duanemorris.com
                        Suite 2000
                        1075 Peachtree Street NE
                        Atlanta, GA 30309-3929
                        (404) 253-6900 (Telephone)
                        (404) 253-6901 (Facsimile)

                        *Counsel for Plaintiff*
                        *IKON Office Solutions, Inc.*

OF COUNSEL *for Plaintiff*
*IKON Office Solutions, Inc.*
Thomas T. Loder, Esquire
Carla M. Bennett, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1246/1153/7312

## **CERTIFICATE OF SERVICE AND TYPE**

Pursuant to Local Rule 7.1D, the undersigned counsel for Plaintiff hereby certifies that the foregoing has been prepared with a font size and point selection (Times New Roman, 14 pt.), and I hereby certify that on July 23, 2012, I electronically filed **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY** with the Clerk of Court using the CM/ECF system which will automatically send email notification to all attorneys of record.

/s/ Alison M. Haddock
Alison M. Haddock